UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MATHEWS,<br><br>          Plaintiff,<br><br>     v.<br><br>RESCUECOM CORPORATION and<br>DAVID A. MILMAN,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 05-4834 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP
By: Edmund M. George, Esq.
20 Brace Road, Suite 300
Cherry Hill, New Jersey 08034
          Counsel for Plaintiff Michael Mathews

CHERNOW KATZ, LLC
By: Harris J. Chernow, Esq.
721 Dresher Road - Suite 1100
Horsham, Pennsylvania 19044
          Counsel for Defendants Rescuecom Corporation and
          David A. Milman

Edmund J. Gegan, Esq.
Corporate Counsel, Rescuecom Corporation
2560 Burnet Avenue
Syracuse, New York 13206
          Counsel for Defendants Rescuecom Corporation and
          David A. Milman

**IRENAS,** Senior District Judge:

This lawsuit arises from an August 31, 2005, letter sent to
Plaintiff Michael Mathews ("Plaintiff") by corporate counsel of
Rescuecom Corporation ("Rescuecom"), informing Plaintiff that

1

Rescuecom was terminating two franchise agreements between the company and Plaintiff.  Plaintiff subsequently commenced the instant action against Rescuecom and David A. Milman ("Milman"), President and CEO of Rescuecom (collectively "Defendants"), to block the termination of his franchises.  Presently before the Court is Defendants' Motion to Dismiss or in the Alternative to Transfer Venue to the Northern District of New York.

## I.

Plaintiff, a New Jersey resident, is a computer professional with expertise in servicing and repairing computer equipment and peripherals.  In or about January, 2004, Plaintiff contacted Milman, a New York resident, regarding purchasing a Rescuecom franchise.

Rescuecom, a New York corporation with its principal place of business in Syracuse, New York, sells franchises in a computer consulting and repairs business.[1]  Rescuecom franchisees provide on-site computer repair and maintenance services to their customers within one hour, twenty-four hours a day, seven days a week.  Rescuecom requires its franchisees to employ a proprietary computer software system known as System One.  System One was designed to manage virtually all aspects of running a Rescuecom

---

[1] This Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332(a)(1), as Plaintiff is a resident of New Jersey and Defendants are residents of New York.

franchise, including scheduling of repair assignments, maintaining customer information, processing billing invoices, recording purchase transactions, and allocating royalty and other payments due from the franchisee to Rescuecom.

On or about April 25, 2004, Plaintiff purchased a "Gold Level" franchise from Rescuecom covering territory in or near Moorestown, New Jersey, for $6,980.00, with an Opening Advertising Fee of $1,750.00.  In April, 2005, Plaintiff purchased a second Rescuecom franchise.  The Franchise Agreements ("the Agreements") for the two franchises are identical.  Each Agreement provided the franchisee with an initial five-year license, with the option to renew for three additional five-year terms.  (Compl., Ex. A, Agreement Part II.)

In relevant part, the Agreements granted Plaintiff "the right, franchise and privilege" to operate a business under the trade name Rescuecom in accordance with the business system developed by Rescuecom.  (Compl., Ex. A, Agreement Part I. A.) Plaintiff was given a copy of the confidential Rescuecom manual and received initial training at Rescuecom headquarters in Syracuse, New York, on how to run a Rescuecom franchise, including the operation of System One.  The Agreements, however, do not obligate Rescuecom to provide any particular support to its franchisees other than the initial training.

Plaintiff was obligated to pay Rescuecom a royalty fee of

18% of his total sales, plus 50% of the gross product profit for products purchased through System One. Plaintiff was also required to spend between $1,250-2,250 on local and internet advertising per month, as well as contribute 2% of his total sales to an Advertising Fund on a daily basis. Rescuecom also required Plaintiff to lease a System One Hand Held Unit, with an activation fee of $480 and a $30 per week license fee.

The Agreements include a detailed section outlining when the franchise may be terminated. Plaintiff could terminate a franchise agreement upon any grounds available by law, after giving written notice to Rescuecom and an opportunity to cure. (Compl., Ex. A, Agreement Part XVII. A.) The Agreements also provide for termination upon notice by Rescuecom and termination by Rescuecom without notice in certain instances of misconduct by the franchisee.

The Agreements contain a "stipulated damages" provision that requires the franchisee to pay certain sums in the event that Rescuecom terminates the franchise due to any default of the franchisee. (Compl., Ex. A, Agreement Part XVIII. F.) They also contain an extensive non-compete provision. For a period of two years after the expiration of the Agreements, or in the event the franchise is terminated, the franchisee may not "own, maintain, engage in, be employed in, consult with or have any interest in any business" that offers the same or similar services as

4

Rescuecom within a certain geographical territory.[2]  (Compl., Ex. A, Agreement Part XVI. E. 1.)

Additionally, the franchisee is barred from hiring or attempting to hire any person who is or has been in the previous year an employee or franchisee of Rescuecom.  (Compl., Ex. A, Agreement Part XVI. E. 2.)  The franchisee may not accept employment with any customer or client of Rescuecom or any entity related to the customer or client.  (Compl., Ex. A, Agreement Part XVI. E. 3.)  Finally, the franchisee may not attempt to divert any business from the franchise to a competitor or otherwise undertake any acts that are injurious to the goodwill associated with Rescuecom or its products.[3]  (Compl., Ex. A, Agreement Part XVI. E. 4.)

The Agreements also contain several provisions relevant to any disputes arising from the relationship between Rescuecom and its franchisee.  The Agreements provide that New York law will apply to any disputes, and that all claims must be brought in the

---

[2]The franchisee is barred from participation in such a business within the Metropolitan Statistical Area, as defined by the United States Census Bureau, where the franchise was located, within the county where the franchise was located, within a radius of ten miles from the franchise location or within a radius of ten miles form the location of any other business using System One, whether a franchise or owned by Rescuecom. (Compl., Ex. A, Agreement Part XVI. E. 1.)

[3]The Agreements contain a separate confidentiality provision. (Compl., Ex. A, Agreement Part VII.)

appropriate federal or state court in Onondaga County, New York[4] ("the forum selection clause").

The Agreements further state that all monetary claims arising out of or relating to the Agreements shall be submitted to arbitration in Onondaga County, New York, pursuant to the rules established by the American Arbitration Association. (Compl., Ex. A, Agreement Part XXXI. A.)  The provision, however, specifically preserves Rescuecom's right to seek injunctive or other provisional relief in any court with jurisdiction, and states that Rescuecom may join related monetary claims to any claim for injunctive relief brought in court.  (Id.)  The Agreements permit either party to seek temporary injunctive relief from a court against actions taken by the other party, pending completion of arbitration.  (Compl., Ex. A, Agreement Part XXXI. B.)

Plaintiff and Rescuecom appear to have had a rocky relationship for some time before the franchises were terminated. On July 29, 2005, Edmund Gegan, Esq., corporate counsel for Rescuecom, sent two letters to Plaintiff notifying Plaintiff that Rescuecom considered him to be in default of the Agreements. (Compl., Ex. B.)  The first letter accused Plaintiff of collecting sales tax from his customers but failing to report or

---

[4]The District Court for the Northern District of New York is located in Syracuse, New York, which is in Onondaga County.

6

pay the tax over to the State, failing to properly report product sales and pay royalties on gross product profits, and failing to provide Rescuecom with the required annual financial statements and tax returns.

The letter informed Plaintiff that he had thirty days to cure or correct the defaults, or show that he has made all reasonable efforts to do so.  The letter specified that Plaintiff must provide proof of reporting and paying the sales tax owed since the inception of his franchises.  The second letter stated that Rescuecom would terminate Plaintiff's franchises if he did not cure the defaults by August 29, 2005.[5]

On August 31, 2005, Gegan sent Plaintiff a Notice of Termination of Franchise Agreement.  (Compl., Ex. C.)  The letter noted that the only proof of Plaintiff's attempts to cure the defaults Rescuecom had received was a document verifying that Plaintiff had established a sales tax account.  The letter does not specify a date on which the termination would become effective.

Rescuecom instituted a lawsuit against Plaintiff in the Supreme Court of Onondaga County, New York, on September 9, 2005. Rescuecom alleges that Plaintiff breached the Agreements and seeks enforcement of the non-compete provisions.  On October 11,

---

[5]Although the second letter was also dated July 29, 2005, the text of the letter suggests that it was sent some time after the first letter dated July 29, 2005, was received by Plaintiff.

2005, Rescuecom filed a motion for a preliminary injunction and a temporary restraining order, seeking to prevent Plaintiff from contacting his former customers and diverting them to his new company.  The temporary restraining order was granted on October 11, 2005, and a hearing was set for November 2, 2005.

On October 21, 2005, Plaintiff removed the action to the District Court for the Northern District of New York.  As a result, no hearing has been held on the temporary restraining order.  Plaintiff subsequently filed a motion to transfer the action to the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).  Plaintiff has not sought modification of the state court's temporary restraining order, which remains in effect until modified by the District Court, pursuant to 28 U.S.C. § 1450.  Neither party has advised the Court of the outcome, if any, of Plaintiff's motion to transfer.

Plaintiff filed the instant Complaint against Rescuecom and Milman on October 7, 2005, alleging violations of the New Jersey Franchise Practices Act and Consumer Fraud Act, as well as fraud in the inducement, breach of implied duties of good faith and fair dealing, and unjust enrichment.[6]  The Complaint includes a claim for injunctive relief, seeking to enjoin the defendants

_____

[6]Defendants were served with summonses and copies of the Complaint on October 18, 2005.  It appears, however, that Rescuecom received a copy of the Complaint and the Motion for a Temporary Restraining Order and Preliminary Injuction from Plaintiff on October 11, 2005.

from enforcing the arbitration and non-compete provisions of the Agreements, and from disparaging Plaintiff to others, including other franchisees of Rescuecom.  Plaintiff also seeks declarations that the Agreements are unenforceable, the non-compete provisions are specifically unenforceable, and the monies removed by Rescuecom from Plaintiff's bank account should be restored.

Plaintiff also filed a Motion for a Temporary Restraining Order and Preliminary Injunction on October 7, 2005.  After a hearing on October 18, 2005, this Court denied Plaintiff's request for a Temporary Restraining Order and Preliminary Injunction.  The Court concluded that Plaintiff had not demonstrated a reasonable probability of success on the merits of his claims pursuant to the New Jersey Franchise Practices Act ("NJFPA"), as it did not appear that Plaintiff could demonstrate that the NJFPA was applicable to his agreements with Rescuecom.

On December 7, 2005, Defendants filed the instant Motion to Dismiss or in the Alternative to Transfer Venue to the Northern District of New York.

## II.

Defendants seek several forms of relief on a variety of grounds.  First, Defendants contend that the Complaint fails to state a claim in any of its counts and thus it should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, they contend that this Court does not have personal jurisdiction over Milman because he does not have sufficient minimum contacts with the State of New Jersey.  They also maintain that this Court should dismiss the Complaint pursuant to Rule 12(b)(6) or Rule 12(b)(3) and 28 U.S.C. § 1406, because venue has been laid in the wrong district as the forum selection clause provided that the sole venue for any claims arising from the Agreements is in the state or federal courts of Onondaga County, New York.  Alternatively, Defendants ask the Court to transfer the case to the District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a).  The Court will first address Defendants' arguments regarding venue and the forum selection clause.

**A.**

As a threshold matter, the Court must determine if the NJFPA applies to the Agreements,[7] because the policies behind and the

---

[7] In considering a Rule 12(b)(6) motion, the court will accept the allegations of the complaint as true.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Although the court must assume as true all facts alleged, "[i]t is not . . . proper to assume that the [plaintiff] can prove any facts it has not alleged."  *Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Finally, when "[c]onfronted with [a 12(b)(6)] motion, the court must review the allegations of fact contained in the complaint; for this purpose

provisions of the NJFPA affect the enforceability of the forum selection clause and impact any analysis of the appropriateness of transferring venue.  *See Kubis & Persyzk Assoc., Inc., v. Sun Microsystems Inc.*, 146 N.J. 176 (1996)(forum selection clauses in contracts covered by the NJFPA are presumptively invalid).

This Court held on October 18, 2005, that Plaintiff had not demonstrated a likelihood of success on the merits of his claims under the NJFPA because he could not establish that the Agreements were franchises protected by the NJFPA.  A franchise exists under the NJFPA if:

> (1) there is a 'community of interest' between the franchisor and the franchisee; (2) the franchisor granted a 'license' to the franchisee; and (3) the parties contemplated that the franchisee would maintain a 'place of business' in New Jersey.

*Cooper Distributing Co., Inc., v. Amana Refrigeration, Inc.*, 63 F.3d 262, 268-69 (3d Cir. 1995)(quoting N.J.S.A. §§ 56:10-3a, 10-4).  Today the Court concludes that the Agreements do not satisfy the third prong of this test and thus the NJFPA is not applicable here.

The NJFPA defines "place of business" as:

> a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services. Place of business shall not mean an office, a warehouse, a place of storage, a residence or a vehicle.

---

the court does not consider conclusory recitations of law." *Pennsylvania v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir. 1988).

11

N.J.S.A. § 56:10-3f.  The New Jersey Supreme Court has emphasized the second aspect of the definition "because it ensures that only those businesses that operate as genuine franchises will obtain the protection of the Act."  *Instructional Systems, Inc., v. Computer Curriculum Corp.*, 130 N.J. 324, 349 (1992).  The Court further held that "there must be a sales location in New Jersey. Mere distribution through an office or warehouse would not qualify."  *Id.* (citation omitted).

Plaintiff provided services and sold products to his customers in their homes or places of business.  He did not operate a fixed retail location or store.  He operated his franchises out of his private residence, a category specifically excluded from the statutory definition of "place of business." While the Agreements contemplated that Plaintiff would establish a principal place of business, it was never meant to be a "sales location."

"[T]he Act's definition contemplates a location where selling is a major activity - a particular kind of selling involving the interplay of goods on display, the physical presence of the customer and the selling efforts of the vendor. It does not contemplate a personal residence in which goods are primarily present in the garage for storage, and in which sales efforts are basically limited to telephoning potential buyers." *Liberty Sales Assocs., Inc., v. Dow Corning Corp.*, 816 F. Supp.

12

1004, 1009 (D.N.J. 1993).  Although customers came to Plaintiff's residence on several occasions and he maintained a separate work area within the home, this use of his residence does not meet the more stringent standard for a "place of business" in the NJFPA.

## B.

Given the conclusion that the NJFPA does not apply and thus does not bar the enforcement of the forum selection clause, the Court must next determine if the clause is unenforceable on any other grounds.  In a diversity case such as this, "the effect to be given a contractual forum selection clause . . . is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *see also Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 27-32 (1988); *Arentowicz v. Cap Gemini Ernst & Young U.S. LLC*, No. Civ. 03-5881, 2004 WL 1834600, at *3 (D.N.J. July 16, 2004).

A forum selection clause is presumptively valid unless the resisting party can show that enforcement of the clause would be unreasonable under the circumstances.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  To show that a forum selection clause is unreasonable and unenforceable, the resisting party must establish: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the

13

particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983); *see also Arentowicz*, 2004 WL 1834600, at *3. Thus the burden is on Plaintiff to demonstrate that the forum selection clause here is unenforceable.

Plaintiff maintains that the forum selection clause was the product of overreaching by Rescuecom and its enforcement would make litigation of his lawsuit prohibitively burdensome.[8]  He argues that the Agreements are form contracts presented by Defendants on a take-it-or-leave-it basis, without opportunity for meaningful negotiations.  He contends that he is not a sophisticated businessman, he was not represented by counsel in his dealings with Rescuecom and was provided a limited amount of time to review the Agreements.  Plaintiff further alleges that he

---

[8]Plaintiff also maintains that the forum selection clause should not be enforced because it conflicts with the strong New Jersey public policy of protecting New Jersey franchisees by providing a New Jersey forum for litigation arising from franchise agreements.  Given our conclusion that the NJFPA does not apply to the Agreements, however, the Court does not agree that the policy announced in *Kubis* would invalidate the forum selection clause here.

Additionally, while Plaintiff contends that Defendants fraudulently induced him to enter into the Agreements, he has not alleged that the forum selection provisions were fraudulently included in the contracts.  "'[A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract . . . [but] must show that the clause itself was the product of fraud or coercion.'" *Barbuto v. Medicine Shoppe*, 166 F. Supp. 2d 341, 346 (W.D. Pa. 2001)(citations omitted).

will be deprived of his day in court if he is required to litigate in Onondaga County, New York, due to the financial burden of litigating far from home and the difficulty of compelling non-party witnesses residing in Philadelphia and southern New Jersey to testify in New York.

The mere fact that an agreement containing a forum selection clause is a contract of adhesion does not render the clause unenforceable. *See Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585, 594-95 (1991)(holding that forum selection clause on back of cruise ticket was enforceable despite lack of bargaining over the terms of the clause); *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) ("That there may not have been actual negotiations over the [forum selection] clause does not affect its validity.").

Plaintiff's summary conclusions that the terms of the Agreements were non-negotiable, he was not represented by counsel, and not given enough time to review the Agreements are insufficient to set aside the forum selection clause. Plaintiff has not alleged that he attempted to negotiate the terms of the Agreements and was rebuffed. *See Danka Funding, L.L.C., v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 471 (D.N.J. 1998)("Defendant's claim that it thought the lease-form was non-negotiable, while admitting that it had failed to attempt to negotiate any portion of the printed terms . . . is simply

15

inadequate."); *Cadapult Graphic Systems, Inc., v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 567 (D.N.J. 2000).

Additionally, Plaintiff signed the second Agreement a year after he entered into the initial Agreement with Rescuecom.  In that time period he surely had time to review the first Agreement, which was identical to the second Agreement, and seek the advice of counsel regarding the terms.  *See Arentowicz*, 2004 WL 1834600, *4 (enforcing forum selection clause where resisting party "does not allege that he even *attempted* to hire counsel or to negotiate any of the terms of the Agreement.")(emphasis in original).  Plaintiff "chose to enter [the] arrangement with [Rescuecom].  Although this may be a form contract, [he was] under no pressure to sign it. . . . [He] chose [Rescuecom] over any other business arrangements [he] might have made." *Barbuto*, 166 F. Supp. 2d at 347.  Moreover, if the terms of the original Agreement were as unfair and unreasonable as Plaintiff alleges, it is certainly surprising that he would enter into an identical contract under the same bargaining conditions only a year later.

Plaintiff has not demonstrated that litigating in the state or federal court in Onondaga, New York, would be so burdensome as to effectively deny him his day in court.  "'Mere inconvenience or additional expense is not the test for unreasonableness.'" *Danka*, 21 F. Supp. 2d at 472 (quoting *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 344 (3d Cir. 1966)).  The

federal courthouse in Onondaga County, New York, is only approximately 260 miles from Camden, New Jersey.  Plaintiff has appeared, through counsel, in the lawsuit pending in the Northern District of New York.

Plaintiff traveled to Rescuecom headquarters in Syracuse, New York, to sign the Agreements and participate in System One training.  *See Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 566 n.6 (noting that Western District of Washington was not a "seriously inconvenient" forum for New Jersey resident who had traveled to Washington to negotiate contract and for other business-related reasons).  Moreover, he has not offered any evidence that his witnesses will be unable to travel to the Northern District of New York to testify.  *See Danka*, 21 F. Supp. 2d at 471-72 (rejecting claim of party seeking transfer where party submitted no evidence indicating that witnesses would be unable to travel to original venue).

The Court thus concludes that the forum selection clause choosing the state or federal courts of Onandaga County, New York, is valid and enforceable.

### C.

Given that Plaintiff cannot demonstrate that the forum selection clause is unenforceable, the Court must determine the proper remedy for Plaintiff's failure to institute this action in

the state or federal court in Onondaga County, New York. Defendants have requested that the Court dismiss Plaintiff's complaint pursuant to Rules 12(b)(3), 12(b)(6), and / or 28 U.S.C. § 1406, or alternatively, to transfer the case to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

The Third Circuit has held that "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001). "[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss.  And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle . . . . But when a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of § 1404." *Id.* at 299.

While it is within the Court's power to dismiss Plaintiff's complaint pursuant to Rule 12, *see id.*, a transfer of venue to the Northern District of New York pursuant to § 1404(a) is the appropriate course here.  As an initial matter, the Court notes that venue is proper in the District of New Jersey.[9]  Moreover,

_____

[9]In a diversity case such as this, 28 U.S.C. § 1391(a)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the

18

venue would be proper in the Northern District of New York
pursuant to 28 U.S.C. § 1391(a)(1), as both Defendants are
residents of that district.[10]  Section 1404(a) provides that
"[f]or the convenience of the parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have been
brought."  28 U.S.C. § 1404(a).  This provision covers instances
in which a suit has been brought in a district where venue is
proper but a transfer is sought for the convenience of the
parties.

A valid forum selection clause is treated as "a
manifestation of the parties' preferences as to a convenient
forum," and is entitled to "substantial consideration." *Jumara*,
55 F.3d at 880 (citing *Stewart*, 487 U.S. at 29-31).  The Court
gives substantial weight to the forum selection clause, which

claim occurred."  Here, Plaintiff purchased two franchises from
Rescuecom covering a geographic area that included parts of
southern New Jersey and operated the franchises in those areas.
He also contends that Rescuecom improperly withdrew monies from
his New Jersey bank accounts and failed to provide the support
and advertising it promised in inducing him to enter the
Agreements.  Thus, a "substantial part of the events or
omissions" that are the subject of this action occurred in New
Jersey.

[10]Defendant Milman is a resident of Syracuse, New York,
which is within the Northern District of New York.  Defendant
Rescuecom resides in the Northern District of New York, pursuant
to § 1391(c), as it is a corporation with its principal place of
business in Syracuse, New York, and thus is subject to personal
jurisdiction in the Northern District of New York.

effectively trumps Plaintiff's choice of the District of New Jersey for this action.  *See Cadapult*, 98 F. Supp. 2d at 567.

The fact that another suit between these parties arising from the same facts and circumstances is already pending in the Northern District of New York weighs strongly in favor of the transfer.  "'To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'"  *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003)(quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).  By litigating both cases in the same forum, much of the inconvenience to the parties and witnesses can be eliminated.

Accordingly, the Court will transfer this case to the Northern District of New York.  Given this ruling, the Court need not address the remaining arguments raised in Defendants' Motion.

## III.

For the reasons given above, the Court will partially grant and partially deny Defendants' Motion to Dismiss.  The Motion will be granted to the extent that it seeks a transfer to the District Court for the Northern District of New York, pursuant to 28 U.S.C. § 1404(a).  The Motion will be denied to the extent that it seeks dismissal of the Complaint for failure to lay venue

20

in the state or federal courts of Onondaga County, New York.  The

Motion will be denied without prejudice with respect to all other

relief sought.  The Court will issue an appropriate order.


Date: February  16, 2006


                              s/Joseph E. Irenas
                              _____
                              JOSEPH E. IRENAS
                              Senior United States District Judge